UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATEL ENGINEERING LTD.,<br><br>    Movant,<br><br>v.<br><br>SHARAD PATEL,<br><br>    Respondent. | Case No. 25-mc-80118-VKD<br><br>**ORDER RE PATEL ENGINEERING LTD.'S MOTION TO ENFORCE NON-PARTY SUBPOENA**<br><br>Re: Dkt. No. 1 |

Patel Engineering Ltd. ("PEL") moves to enforce a non-party document subpoena directed to Sharad Patel, issued by the United States District Court for the District of Colorado. Dkt. No. 1. Mr. Patel opposes the motion. Dkt. No. 14. The Court held a hearing on the matter on June 17, 2025. Dkt. No. 19.

Having considered the moving and responding papers, and the oral arguments presented, the Court grants PEL's motion, as specified in this order.

## I. BACKGROUND

PEL is one of several defendants in a civil action filed by two surety companies in the District of Colorado, *Continental Casualty Company, et al. v. Arrowrock, LLC, et al.*, No. 1:19-cv-03631-DDD-MDB (D. Colo.) ("Colorado action"). The sureties claim that PEL is a party to an indemnity agreement signed on its behalf by its purported agent Sonal Patel. Dkt. No. 1-5 ¶¶ 18-21. According to the sureties, PEL (together with others) agreed to indemnify the sureties for any losses suffered in connection with payment and performance bonds provided on behalf of ASI Constructors ("ASI"), a "heavy civil contractor that specializes in the construction of dams and other water related infrastructure." *See id.* ¶¶ 15, 18, 30-31. The sureties allege that Ms. Patel was

an officer and director of ASI. *Id.* ¶ 33(c). ASI, Ms. Patel, and her husband, Bhimsen Batra, are also defendants in the Colorado action. *See generally* Dkt. No. 1-5. The sureties seek to recover tens of millions of dollars in the action from the defendants, including from PEL. *Id.* ¶¶ 18, 27, 130. PEL contends that Ms. Patel was not its agent with respect to the indemnity agreement, and that it owes no obligation to the sureties under that agreement. Dkt. No. 1-2 at ECF 10-11; Dkt. No. 17 at ECF 3 n.1, 4-5. According to PEL, Ms. Patel has taken contradictory positions in the Colorado action but at present contends that she *was* acting as an agent for PEL with respect to the indemnity agreement. Dkt. No. 19; *see also* Colorado action, Dkt. No. 233 at ECF 4, 9, 11.

In 2024, after the Colorado action had been pending for many years, Ms. Patel and Mr. Batra filed cross-claims against PEL, asserting that PEL had agreed to indemnify *them* against any claims or losses "of any kind and or of whatever source or nature or in any location or country." *See* Dkt. No. 1-7 ¶ 21. These cross-claims relied heavily on a July 24, 2024 affidavit signed by Ms. Patel's father, Pravin Patel. *See id.* at ECF 17. On May 30, 2025, the Colorado court dismissed the cross-claims on *forum non conveniens* grounds. Dkt. No. 18-1.

Sharad Patel is Ms. Patel's third cousin and Mr. Pravin Patel's nephew. Dkt. No. 14 at ECF 7. For a time, Sharad Patel also served on PEL's board of directors. Dkt. No. 1-2 at ECF 7. He is not a party to the Colorado action. Dkt. No. 14 at ECF 7.

On December 13, 2024, PEL served a document subpoena on Sharad Patel. Dkt. No. 1-2 at ECF 8; Dkt. No. 1-8. The subpoena asked Mr. Patel to produce the following documents:

1. All Documents relating to ASI.

2. All Documents relating to this Action.

3. All Documents relating to any purported promises of indemnity between Sonal Patel and/or Bhimsen Batra, on the one hand, and Pravin Patel, Rupen Patel, and/or any other purported or actual representative of PEL on the other hand.

4. All Documents relating to the purported July 2024 affidavit of Pravin Patel, including without limitation Documents concerning its planning, drafting, execution, witnessing, and/or transmittal.

5. All Communications between or among You and (1) Sonal Patel and/or any of her Representatives; (2) Bhimsen Batra and/or any of his Representatives; (3) Rupen Patel; (4) Pravin Patel; (5) Robert "Sonny" Wiegand; and/or (6) any Representative of PEL

2

concerning any of the following topics:

    a. ASI;

    b. This Action;

    c. Any purported promises of indemnity between Sonal Patel and/or Bhimsen Batra, on the one hand, and Pravin Patel, Rupen Patel, and/or any other purported or actual representative of PEL on the other hand;

    d. The purported July 2024 affidavit of Pravin Patel.

Dkt. No. 1-8 at ECF 9.

       Mr. Patel requested more time to respond to the subpoena, and PEL agreed to extend the response deadline to February 28, 2025. Dkt. No. 1-2 at ECF 8; Dkt. No. 1-4 ¶ 11. However, Mr. Patel did not respond to the subpoena by that date. Dkt. No. 1-2 at ECF 8; Dkt. No. 1-4 ¶ 12. After PEL inquired about the status of Mr. Patel's response, his current counsel advised that Mr. Patel would respond to the subpoena on March 14, 2025. Dkt. No. 1-2 at ECF 9.

       On March 14, 2025, Mr. Patel served written responses and objections to each document request in PEL's subpoena. Dkt. No. 1-15. On the same date, he produced 14 pages of responsive documents, Bates labeled SHAR 0001-0017.[1] *Id.*; *see also* Dkt. No. 1-2 at ECF 9. On March 20, 2025, Mr. Patel produced a privilege log identifying 14 additional documents as responsive but potentially protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Dkt. No. 14 at ECF 9; Dkt. No. 17 at ECF 6; Dkt. No. 17-10.

       Because PEL had already collected from its *own* custodians hundreds of what it believed were responsive emails sent to or from Mr. Patel's pacbell.net email account, when Mr. Patel produced or listed only 72 pages of documents, PEL strongly suspected that Mr. Patel had not conducted an adequate search of his emails and other ESI for documents responsive to the subpoena. *See* Dkt. No. 1-2 at ECF 7. PEL asked Mr. Patel to conduct a further search for responsive documents, offering to narrow the scope of its document requests and to pay certain costs associated with the collection and hosting of Mr. Patel's ESI. *Id.* Mr. Patel declined, principally citing the burden further search efforts would impose on him as a non-party to the

---

[1] This Bates range may contain an error, as Mr. Patel's privilege log lists SHAR 0015-0017 as privileged or work product material, not a production document. Dkt. No. 17-10 at ECF 1.

3

1    Colorado action.  Dkt. No. 14 at ECF 9.

2         On May 2, 2025, PEL narrowed the scope of its document requests in the subpoena to the
3    following four specific categories:

> 1. Communications with Pravin Patel, Sonny Weigand (formerly an ASI corporate officer and Sonal Patel's personal lawyer), Sonal Patel, Bhimsen Batra, or counsel for Ms. Patel/Mr. Batra regarding the lawsuit pending in the District of Colorado from January 1, 2019 through the present.
>
> 2. Communications with Pravin Patel, Sonny Weigand, Sonal Patel, Bhimsen Batra, or counsel for Ms. Patel/Mr. Batra concerning ASI from 2009, and 2015 through the present.
>
> 3. Communications with Pravin Patel, Sonny Weigand, Sonal Patel, Bhimsen Batra, or counsel for Ms. Patel/Mr. Batra regarding any promise of or request for indemnity by or from PEL or PEI from 2009, and 2015 through the present.
>
> 4. Communications with Pravin Patel, Sonny Weigand, Sonal Patel, Bhimsen Batra, or counsel for Ms. Patel/Mr. Batra regarding the July 2024 affidavit of Pravin Patel, including its planning, drafting, negotiation, or execution, from January 1, 2024 through the present.

Dkt. No. 1-2 at ECF 8; Dkt. No. 1-22.  In addition, PEL offered to "pay for the collection and hosting of Mr. Patel's data," and to work with Mr. Patel to identify search terms to minimize the burden of review of collected materials.  Dkt. No. 1-22 at ECF 2.  Mr. Patel again declined to undertake a further review, insisting that he had already conducted a reasonable review for responsive documents and had produced those unprivileged documents that he found.  Dkt. No. 14 at ECF 10-11; Dkt. No. 13-17.

     Believing Mr. Patel has neither conducted a reasonably diligent search nor produced responsive documents in his possession, custody, or control, PEL now moves to compel Mr. Patel's further compliance with the document subpoena.

## II.   LEGAL STANDARD

     Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties.  The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b).  *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory committee

note (1970)). Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

### III. DISCUSSION

Mr. Patel did not move to quash PEL's document subpoena. He responded to the subpoena, albeit belatedly, and produced some documents and a privilege log. PEL argues that Mr. Patel's production was insufficient, and moves to compel compliance with the subpoena on the following grounds: (1) as narrowed, the subpoena seeks documents that are relevant to the sureties' claims and PEL's defenses to those claims, and this discovery is proportional to the needs of the case; (2) the subpoena calls for Mr. Patel to provide documents that cannot be obtained from parties in the Colorado action; (3) Mr. Patel has not conducted an adequate search for responsive documents; and (4) PEL has offered to mitigate the burden on Mr. Patel by paying for certain electronic discovery expenses and by thereafter negotiating a narrow scope of review and production. Dkt. No. 1-2 at ECF 9-16. Mr. Patel opposes the motion on the following grounds: (1) he has already conducted a reasonable search for responsive documents and fully complied

5

1  with PEL's subpoena; (2) he should not be required to engage in any further document collection,

2  review, or production because PEL may obtain at least some of the same discovery from parties to

3  the Colorado action or from other non-parties; and (3) PEL should be required to pay for Mr.

4  Patel's attorneys' fees incurred to date, as well as for any further document review that he is

5  ordered to conduct. Dkt. No. 14 at ECF 15-24.

The Court addresses each material point of dispute.

### A.     Relevance and scope of documents sought by PEL's subpoena

While Mr. Patel argues that PEL seeks documents that are not relevant to a claim or defense in the Colorado action, he did not timely assert this objection in response to the subpoena. In any event, Mr. Patel contends that he has already produced all of the responsive documents he could locate after a reasonable search. Dkt. No. 14 at ECF 13-14.

PEL has demonstrated that Mr. Patel is likely to have communications and other ESI that are relevant to a claim or defense in the Colorado action. Specifically, PEL points to information previously obtained in discovery supporting its contention that Mr. Patel served as an advisor and confidant with respect to Ms. Patel and her activities on behalf of ASI Constructors and her disputed activities on behalf of PEL during the relevant time periods. To the extent Mr. Patel contends that the recent dismissal of cross-claims against PEL "extinguishes" or "eliminates" PEL's need for discovery from Mr. Patel, *see* Dkt. No. 18 at ECF 4, the Court is not persuaded. As discussed during the motion hearing, PEL also seeks this discovery in aid of its defense to the sureties' claims against it, and in particular, to address the sureties' contention that Sonal Patel signed the indemnity agreement at issue as PEL's agent and Ms. Patel's own (perhaps contradictory) testimony on this point. As narrowed, the four categories of documents PEL seeks are reasonably tailored by date and subject matter to identify this evidence.

To the extent Mr. Patel contends that he should not have to produce "metadata" for any documents responsive to PEL's subpoena, *see* Dkt. No. 14 at ECF 18-19, this objection is not well founded. Rule 45 specifically contemplates the production of electronically stored information ("ESI") "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 45(e)(1). While ESI is commonly produced with certain standard

1   metadata fields, there is no single uniform requirement applicable to all forms of ESI. *See, e.g.,*

2   *SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, No. 24-cv-01321-BLF (VKD), 2024 WL 4933347, at *2

3   (N.D. Cal. Dec. 2, 2024) (noting disagreement among district courts). However, in view of PEL's

4   proposal for addressing Mr. Patel's burden, discussed below, the Court expects that any burden

5   associated with production of metadata will be borne by PEL.

6       Thus, the Court concludes that PEL has met its burden to show that the as-narrowed

7   document subpoena seeks evidence that is relevant and proportional to the needs of the case.

**B.     Documents available from parties or other non-parties**

9       Mr. Patel contends that the documents PEL seeks are available from parties to the

10   Colorado action, including PEL's co-defendants Sonal Petal and Bhimsen Batra. He argues that

11   he should not bear the burden of producing discovery PEL could obtain from these parties. Dkt.

12   No. 14 at ECF 17-18. PEL asserts that it has asked Ms. Patel and Mr. Batra to produce some of

13   the same documents, but those documents have not been produced, and both Ms. Patel and Mr.

14   Batra have represented at least some of them may no longer available due in part to the fact that

15   ASI's assets, including its email servers, have been sold off. Dkt. No. 1-2 at ECF 7, 14-15.

16   Otherwise, PEL argues there is no reason to believe any other parties have any documents

17   responsive to the four categories in PEL's as-narrowed subpoena. In addition, PEL argues that

18   there is no per se rule prohibiting a party from seeking discovery from a non-party until it fully

19   exhausts all party discovery. *See* Dkt. No. 17 at ECF 8-10.

20       Courts have long taken care to protect non-parties from bearing the burden of discovery

21   properly borne by parties to a litigation. *See United States v. C.B.S., Inc.*, 666 F.2d 364, 371 (9th

22   Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and

23   should not be forced to subsidize an unreasonable share of the costs of a litigation to which they

24   are not a party."); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal.

25   2007) ("There is simply no reason to burden nonparties when the documents sought are in

26   possession of the party defendant."). Here, with the exception of Sonal Patel and Bhimsen Batra,

27   no party to the litigation is likely to have responsive communications between Mr. Patel and the

28   five individuals identified in PEL's as-narrowed document categories. And, as to Ms. Patel and

1  Mr. Batra, the record reflects that PEL *has* sought responsive documents from them and that
2  neither has produced those documents.  The Court is not persuaded that PEL must first move,
3  unsuccessfully, to compel this production before seeking any documents from Mr. Patel,
4  particularly when PEL has offered to mitigate the burden on Mr. Patel from such production.  Nor
5  is the Court persuaded that PEL must first subpoena other *non-parties* before seeking discovery
6  from him.

        C.       **Mr. Patel's compliance with the subpoena**

Mr. Patel contends that he has fully complied with PEL's subpoena.  Specifically, he attests that he "engaged in a reasonable, diligent, and good faith search of [his] email account, personal cell phone, and documents for responsive materials," and that as part of this effort he "ran searches for exchanges with the following individuals: a. 'Sonal Patel'; b. 'Bhimsen Batra'; c. 'Rupen Patel'; 'Pravin Patel'; e. 'Robert Wiegand' and 'Sonny Wiegand'." Dkt. No. 15 ¶ 9.  He further attests that, "[t]hrough [his] counsel," he produced 17 pages of documents "which constituted all the responsive, non-privileged documents in [his] possession, custody, and control." *Id.* ¶ 10.  Mr. Patel does not elaborate on how he conducted his searches.[2]  When questioned about the nature of Mr. Patel's search and subsequent production, Mr. Patel's counsel indicated that Mr. Patel had searched for *any* email exchanged with one or more of the five individuals, during the past 20 years, and had either produced or logged as potentially privileged *every* such communication.  Dkt. No. 19.

The record reflects that Mr. Patel undertook, on his own, to review his email, messages, and other ESI, without counsel's assistance.  Indeed, PEL's counsel attests that, in response to a question about how a reasonable search of Mr. Patel's data could have yielded so few documents, Mr. Patel's counsel responded: "I'm not the one doing the searches, so how would I know whether what my client did is sufficient?" Dkt. No. 1-4 ¶ 28.  Mr. Patel's counsel does not dispute that he made this remark.  *See generally* Dkt. No. 13.

---

[2] The Court notes that Mr. Patel says he searched for communications with Robert or Sonny "W<u>ie</u>gand," the name that appears in PEL's original subpoena, whereas PEL most recently has asked for communications with Robert or Sonny "W<u>ei</u>gand."

8

While it is not necessary in all circumstances for counsel to personally conduct or directly supervise a client's collection, review, and production of responsive documents, in this case PEL has shown that there are reasons to question the adequacy of Mr. Patel's search for and production of responsive email, messages, and documents. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-6370-EJD (VKD), 2020 WL 2838806, at *5-6 (N.D. Cal. June 1, 2020). As noted above, PEL has shown that Mr. Patel likely has or had responsive documents corresponding to the document categories in PEL's as-narrowed subpoena, and that other discovery obtained in the case suggests his responsive communications are more extensive than what has been produced or logged.

In these circumstances, the Court cannot agree that Mr. Patel has fully complied with the as-narrowed subpoena, and concludes that further collection and review is required.

### D. Further action necessary to comply with PEL's subpoena

PEL proposes that Mr. Patel's compliance with the as-narrowed subpoena can be reasonably assured by some further investigation as follows: A third party e-discovery vendor will collect relevant data sources (specifically, Mr. Patel's email accounts and messaging applications) and provide that collection to Mr. Patel's counsel. The data will be hosted in an appropriate e-discovery database so that Mr. Patel's counsel can run appropriate searches in the data to determine the number of hits. Those numbers will be shared with PEL's counsel so that PEL and Mr. Patel can assess whether further review may be necessary or whether Mr. Patel's production of responsive documents is complete. PEL will pay for the reasonable and ordinary costs of collection and hosting of the data that would otherwise be incurred by Mr. Patel. *See* Dkt. No. 17 at ECF 9-10; Dkt. No. 19. Mr. Patel objects to this intrusion upon his privacy and to the further burden such collection and review would impose.

The Court finds that PEL's proposal, as clarified at the motion hearing, represents an efficient and reasonable approach to resolving the remaining questions about the adequacy of Mr. Patel's compliance with the as-narrowed subpoena, and the Court adopts it, with some modifications, as set forth below. In the Court's view, this approach minimizes the burden on Mr. Patel by permitting his counsel to maintain control of his ESI, and by requiring PEL to bear the

reasonable costs of ESI collection and hosting.

## IV. CONCLUSION

For the reasons explained above, the Court grants PEL's motion to compel further compliance with the document subpoena, as narrowed, and orders as follows:

(1) Mr. Patel shall make the following ESI data sources available for collection, at a mutually agreeable time but no later than **July 7, 2025**: (a) the contents of his pacbell.net and gmail.com email accounts; (b) the contents of his messaging applications on his cellular telephone.

(2) A third-party e-discovery vendor, selected by PEL, shall collect the ESI from these data sources for the period from January 1, 2009 to the present. The ESI shall be provided by the e-discovery vendor to Mr. Patel's counsel and shall not be shared with PEL.

(3) Mr. Patel's counsel (or his designee) shall host the ESI in a database, such as Relativity, that permits searching.

(4) PEL shall provide search terms to Mr. Patel's counsel—i.e. the names and, if known, the email addresses corresponding to the individuals identified in the four categories of the as-narrowed subpoena.

(5) Within **5 court days** of receiving PEL's search terms or receiving the ESI collected from Mr. Patel's data sources (whichever is later), Mr. Patel's counsel (or his designee) shall conduct the searches and report the number of "hits" for each search term to PEL.

(6) PEL and Mr. Patel shall thereafter confer regarding what steps, if any, should be taken regarding Mr. Patel's further compliance with the as-narrowed subpoena.

(7) PEL shall be responsible for the reasonable and ordinary costs of the e-discovery vendor and for hosting the data collected.

The parties may alter the above deadlines by stipulation, if they wish.

Mr. Patel and his counsel shall take all necessary steps to reasonably ensure that potentially responsive ESI is not deleted or destroyed before it can be collected by the e-discovery vendor.

On or before **July 31, 2025**, PEL and Mr. Patel shall jointly file a status report advising the Court of the status of their compliance with this order and whether any further proceedings in this miscellaneous action are required.

As this order disposes of PEL's application for relief, the Clerk of Court is directed to close this file. The closure will not impact PEL's or Mr. Patel's ability to seek further relief, if necessary, concerning PEL's application and/or compliance with this order.

**IT IS SO ORDERED.**

Dated: June 23, 2025

Virginia K. DeMarchi
United States Magistrate Judge